UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| R.N., et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>MARK S. REDAL, et al.,<br><br>        Defendants. | CASE NO. C16-5059 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment. Dkt. 26. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

### I. PROCEDURAL HISTORY

On January 21, 2016, Plaintiffs filed their complaint in this action. Dkt. 1. On February 5, 2016, Plaintiffs filed an amended complaint. Dkt. 3. Plaintiffs asserts claims against Defendants under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment. *Id.* at 12. On February 23, 2016, Defendants answered the amended

complaint, asserting that Plaintiffs' claims are barred by the applicable statute of limitations. Dkt. 6. at 7.

On May 11, 2017, Defendants moved for summary judgment on the grounds that the applicable statute of limitations bars this action. Dkt. 26. On June 12, 2017, Plaintiffs responded. Dkts. 31, 34. On June 23, 2017, Defendants replied. Dkt. 40.

## II. FACTUAL BACKGROUND

This case revolves around the repeated rape and frequent sexual abuse suffered by Plaintiffs as children when Washington Department of Social and Health Services ("DSHS") placed them in the care of the Kiwanis Vocational Home ("KVH"). The numerous instances of sexual abuse of Plaintiffs occurred from 1988 through 1991. Plaintiffs S.C., R.N., and J.W. reached the age of majority at 18 years old in 1991, 1994, and 1995, respectively. They commenced this action on January 21, 2016.

## III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must construe any factual issues of controversy in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.     Accrual of Plaintiffs' 42 U.S.C. § 1983 Claims**

Defendants move for summary judgment on the basis that Plaintiffs' claims are barred by the applicable statute of limitations. The statute of limitations period for § 1983 actions is "a State's personal injury statute of limitations." *Owens v. Okure*, 488 U.S. 235, 240–41 (1989). Pursuant to RCW 4.16.080(2), the period of limitations in this case is three years. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). The parties do not dispute the applicable statute of limitations or applicable tolling period until Plaintiffs reached the age of majority. *See* Dkts. 31, 40. Instead, the parties' arguments on this motion turn exclusively on when Plaintiffs' claims accrued and the period of limitations began to run. *Id.*

While state law determines the length of the limitations period, federal law determines when a claim accrues. *Western Ctr. for Journalism v. Cederquist*, 235 F.3d

1153, 1156 (9th Cir. 2000).[1] Under federal law, a principle known as the "discovery rule" dictates that a cause of action accrues on the date "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City and Cty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). As the Supreme Court has noted, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000).

Other courts in this district have recognized that, under the discovery rule, "the possibility that a person who has been in a sexually abusive relationship may not realize that he or she is injured until many years after the sexual act occurred." *J.I. v. United States*, No. C06-5674RJB, 2007 WL 983138, at *5 (W.D. Wash. March 26, 2007) (citing *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986); *A.T. v. Everett Sch. Dist.*, C16-1536JLR, 2017 WL 784673, at *3 (W.D. Wash. Feb. 28, 2017). Nonetheless, "a claim does not wait to accrue until a party knows the precise extent of an injury." *Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir. 1984). Therefore, in ascertaining the accrual of Plaintiffs' cause of action, the relevant date is when Plaintiffs first learned of any significant injury resulting from Defendants' allegedly wrongful conduct. *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 972 (9th Cir. 2002) ("The relevant date, however, is not when [plaintiff] knew about these particular injuries, but when he should have known of *any* significant injury from defendants' wrongful conduct.") (emphasis in original).

---

[1] Plaintiffs base their argument on "Washington discovery rule law in the realm of sexual abuse." *See* Dkt. 34 at 34. However, "[a] consistent accrual principle for § 1983 claims reflects [the Supreme Court]'s direction that such claims are distinct from and unaffected by the manner in which a state chooses to shape a state law cause of action." *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)).

While Defendants bear the initial burden in showing that the events on which Plaintiffs' claims are based fall outside of the period of limitations, "Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### 1. Knowledge of Injury

Plaintiffs argue that they are entitled to the benefit of the discovery rule because they "did not realize that the cause of [their] psychological problems as [adults] was the sexual abuse . . . until 2014 or later, when they each experienced a significant triggering event." Dkt. 31 at 33. R.N. has stated that he first discovered a causal relationship between his childhood sexual abuse and his psychological injuries while reading a 2013 news article and while receiving therapy in January to February of 2014. Dkt. 32-1 at 4. J.W. has testified that he first discovered a causal relationship between his abuse and his psychological injuries in November of 2014 when, during an interview for application to a Prison's Sex Offender Treatment Program, he "began reflecting on [him]self and started seeing connections between [his] victimization and [his] suffering." *Id.* at 49. S.C. has testified that he first discovered a causal relationship between his abuse and his psychological injuries in October of 2014 when reading literature on Post Traumatic Stress Disorder that was provided to him by his prison cellmate. *Id.* at 86.

Plaintiffs' testimony is supported, at least somewhat, by the psychological evaluations conducted by Dr. Randall Green, Ph.D. Regarding R.N., Doctor Green noted that his mental health records from 1993 through 2013 made no mention of sexual abuse and "the first and most specific mention of [R.N.] disclosing he had been repeatedly

sexually assault when under the supervision and care of DSHS" occurred on January 24, 2014. Dkt. 32-1 at 38. The next week, R.N.'s counselor at the Department of Corrections diagnosed him with numerous psychological disorders that could have resulted from the trauma. *Id.* at 38–39. Dr. Green states his opinion that "[w]hile [R.N.] knew he hated the experiences . . . he began resorting to mood altering through drugs, dissociation/amnesia, and/or 'not thinking' about his assaults, as much as he could manage." *Id*. at 42.

Regarding J.W., Dr. Green's evaluation indicates that J.W. was already aware of his sexual abuse by 2013 when he entered the custody of the Department of Corrections. Dkt. 32-1 at 70. However, Dr. Green also indicates that J.W. "had still not spoken to another human being about what he represents happened to him that changed him in deep ways back then" until speaking with a prison therapist in 2015. *Id.* at 76. Dr. Green concludes that "J.W. did not allow himself to mentally face the reported victimization experiences . . . until the beginnings of that [sic] happened in 2015." *Id.* at 77.

Finally, regarding S.C., Dr. Green notes that S.C. had previously disclosed to a therapist that "bad things happened" when he was in foster care; but Dr. Green also notes that S.C.'s assertion that, despite acknowledging bad things had happened to him, the details of the sexual abuse "had 'never crossed [his] mind.'" Dkt. 32-1 at 109. Dr. Green also relates S.C.'s statements that, after R.N. happened to be incarcerated in an adjacent cell, "all the memories of what happened to us came back while talking to my (cell block) neighbor . . . a kid I'd actually seen be raped by [the same predator], R.N." *Id.* Dr. Green concludes that "it is my opinion that S.C. did not begin to 'connect the dots' or draw a

connection between [his abuse] and the injuries related to the traumatic experiences he reports . . . " until his contact with R.N. in 2013. *Id.* at 118.

Dr. Green's evaluations, coupled with Plaintiffs' testimony, create uncertainty regarding whether Plaintiffs have only recently begun to "face" or recognize that the trauma of their childhood abuse had resulted in the severe psychological injuries of which they now complain. *See* Dkt. 32-1 at 42 (R.N.'s delayed "connection" between his childhood abuse and his own subsequent abusive behaviors "is consistent with a survivor who compartmentalized his abuse and . . . effectively learns to 'not think' or develop a form of amnesia about the experiences."); *id.* at 77 ("J.W. did not allow himself to mentally face the reported victimization experiences . . . until the beginnings of that [sic] happened in 2015."); *id.* at 119 ("[I]t is only since 2013 that S.C. has begun to face, rather than avoid, thinking about [his abuse] and its impact on him.").

However, whether Plaintiffs have only recently recognized that their childhood abuse caused them severe psychological trauma is not the question before the Court. Instead, the relevant issue is when Plaintiffs reasonably should have known that their state-ordered placement in the custody of their abuser resulted in a compensable violation of their asserted substantive due process right to bodily integrity. *See Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) ("Although this court has never explicitly stated that this liberty interest includes the right to be free from sexual abuse by [state] employees, a [child]'s liberty interest in bodily integrity logically encompasses such freedom."). This is because the Fourteenth Amendment violation asserted by Plaintiffs encompasses not only the narrow psychological trauma of which

they now complain, but rather the entire range of damages stemming from the alleged deprivation of their liberty interest to be free from sexual abuse. The accrual of a § 1983 claim is not severable to the various specific damages (such as the latent psychological trauma that Plaintiffs rely upon for asserting the application of the discovery rule) that result from a single constitutional deprivation. As stated by the Supreme Court in regards to a § 1983 claim:

> [T]he tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation and citations omitted).

Plaintiffs cite to *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), for the proposition that, in lawsuits involving sexual abuse, it is "'particularly inappropriate to determine as a matter of law what the plaintiff should have known' . . . where the injury and the cause of the injury are 'complicated.'" Dkt. 34 at 31 (quoting *Simmons*, 805 F.2d at 1368). However, Plaintiffs' reliance on *Simmons* in this case is improper. In *Simmons*, the Ninth Circuit determined that the well-documented phenomenon of transference prevented a therapy patient from recognizing that she had suffered injury due to an exploitative sexual relationship with her therapist that had seemed consensual. *Simmons*, 805 F.2d at 1368. The cause of action in *Simmons* was "psychiatric malpractice" under the Federal Tort Claims Act, which allowed the court to determine that questions regarding when the plaintiff first discovered her emotional injuries created a genuine

issue of fact as to whether transference had prevented the plaintiff from recognizing that she had suffered any abuse that would give rise to her cause of action. *Id.* at 1367–68. *See also Mansfield v. Watson*, 990 F.2d 1258 (9th Cir. 1993) (stating that in *Simmons* "plaintiff did not know she had been abused until diagnosis") (emphasis added).

In this case, there is no dispute that the Plaintiffs were aware, well in advance of 2013, of their childhood abuse. In 1991, after his placement with the Juvenile Rehabilitation Administration, J.W. "cooperated with his counselors . . . and provided his history, including the offensive sexual abuse at KVH." Dkt. 27-2 at 117. J.W. was still clearly aware of his sexual abuse prior to 2013 when he entered the custody of the Department of Corrections. Dkt. 32-1 at 70. Likewise, S.C. knew of physical abuse he had suffered at KVH at least as early as 2008, as revealed by a psychological evaluation at that time. *Id.* at 108–09. Both S.C. and his mother also acknowledged in a 2008 online blog post that S.C. and his brother "had been abused [at KVH] while under DSHS care." Dkt. 27-2 at 76. Similarly, R.N. had complained at numerous times in the early 1990s of the abuse he had suffered between 1989 and 1990. *Id.* at 34–35. Importantly, none of Plaintiffs claim that they have suffered from repressed memories or that they were ever actually unaware that they had were abused at KVH. Instead, they contend that "there are, at the very least, fact issues regarding whether Plaintiffs knew or should have known more than three years before they filed suit *that their psychological problems as adults were caused by sexual abuse as children.*" Dkt. 34 at 33. While this is true, this does not establish a genuine dispute of fact regarding whether or not Plaintiffs were ever unaware they had been sexually and otherwise physically abused at KVH. Accordingly, the Court

must conclude that Plaintiffs have failed to carry their burden in establishing a genuine question on whether they only recently learned of their injuries stemming from placement at KVH.

### 2. Knowledge of State Actor Causation

The Court also finds that there is no genuine dispute of fact that Plaintiffs knew or should have known of state actors' involvement in causing their abuse. Citing *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 297–98 (2008), Plaintiffs argue that they lacked knowledge of state actors acting deliberately indifferent towards their sexual abuse "until [recently] after retaining counsel, filing suit, and investigating the matter." Dkt. 34 at 34. The Court rejects this argument. Plaintiffs cannot overcome the fact that they knew or reasonably should have known that they were subject to a state program when they were placed at KVH and subjected to sexual abuse. This information alone is sufficient to cause any reasonable person to consult with an attorney and inquire into the state's potential liability. *See Rosales v. United States*, 824 F.2d 799, 804 (9th Cir. 1987) ("[T]he 'should have reasonably known' standard . . . looks not to the likelihood that a plaintiff would in fact have discovered the cause of his injury if he had only inquired, but instead focuses on whether the plaintiff could reasonably have been expected to make the inquiry in the first place."). Armed with such knowledge, Plaintiffs easily could have protected themselves "by seeking advice in the . . . legal community." *U. S. v. Kubrick*, 444 U.S. 111, 123 (1979). "To excuse [them] from promptly doing so by postponing the accrual of [their] claim[s] would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government." *Id.*

## C. Conclusion

The Court concludes that Plaintiffs' § 1983 claims are barred by the statute of limitations. Plaintiffs rightly point out that actions based on sexual abuse present unique and difficult circumstances that make applying a limitations period particularly difficult. To quote their briefing, "the sexual abuse of a minor by a trusted authority figure wreaks profound emotional and psychological turmoil in the child to the extent that bringing suit at the time of sexual abuse is, as a practical matter, an impossibility." Dkt. 31 at 26. However, this is a policy concern that must be addressed by lawmakers in regards to causes of action that are predicated specifically on intentional sexual abuse. As recognized by Plaintiffs, "[i]t is the increasing recognition of this phenomena that has so many state legislatures enacting extended statutes of limitations to make more clear and equitable the time for bringing suit by a child abuse survivor." *Id.* at 27. *See also* RCW 4.16.340 (providing a special rule of accrual statute for "claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse. . . ."). This concern does not change the fact that Plaintiffs have long been aware of a significant violation of their right to bodily integrity resulting from state actors having placed them in their abuser's home. Under existing federal law governing claim accrual, this knowledge was sufficient to start the limitations period on their § 1983 claims and Plaintiffs have failed to establish a triable issue of fact as to whether the discovery rule applies.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant's motion for summary judgment (Dkt. 26) is **GRANTED**. The Clerk shall enter judgment for Defendants and close this case.

Dated this 7th day of August, 2017.

_____
BENJAMIN H. SETTLE
United States District Judge